UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN DASHO,

              Plaintiff,

    v.

CITY OF FEDERAL WAY, et al.,

              Defendants.

CASE NO. C12-1398JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' RENEWED
MOTION TO EXCLUDE EXPERT
WITNESSES

## I.  INTRODUCTION

Before the court is Defendants City of Federal Way, Officer Kelly Smith, and Officer Steven Wortman's ("Defendants") renewed motion to exclude expert witnesses. (2d Mot. (Dkt. # 62).)  Defendants seek to exclude the testimony of Plaintiff Jonathan Dasho's proposed expert witnesses Kay Sweeney and D.P. Van Blaricom.  (*Id.* at 1.)  The court has reviewed Defendants' motion, all submissions filed in support of and opposition thereto, the relevant portions of the record, and the applicable law.  Being fully advised, the court grants in part and denies in part Defendants' motion.

1   Specifically, the court excludes as unreliable the opinions of Mr. Sweeney related to the

2   sequence of gunshots and the movements of Mr. Dasho.  The court does not, however,

3   exclude any other aspects of Mr. Sweeney's expert testimony as described below.  The

4   court also excludes as irrelevant the opinions of Mr. Van Blaricom regarding the specific

5   use of force in this case.  Finally, the court denies Defendants' motion as it pertains to

6   Mr. Van Blaricom's proposed testimony on general police practices and standards.

7                   **II.     BACKGROUND**

8        This litigation arises out of an encounter between Mr. Dasho and Officers Smith

9   and Wortman that occurred on August 19, 2009.  (*See* Wortman Decl. (Dkt. # 42) ¶ 3, Ex.

10  A ("Wortman Report") at 1; 1st Resp. (Dkt. # 43) at 2 (citing *State v. Dasho*, 171 Wash.

11  App. 1030, at *1 (Wash. Ct. App. 2012)).)  On that night, neighbors reported a

12  disturbance at Mr. Dasho's apartment.  (1st Resp. at 2 (citing *Dasho*, 171 Wash. App. at

13  *1).)  Officers Smith and Wortman responded to that call and demanded to be let into the

14  apartment.  (*Id.*; Wortman Report at 1-2.)  Jared Dasho, Mr. Dasho's brother, let the

15  officers into the apartment where Mr. Dasho lay naked on the living room floor.  (1st

16  Resp. at 2 (citing *Dasho*, 171 Wash. App. at *1).)  As the officers entered the living

17  room, Mr. Dasho jumped up, ran into the kitchen, and grabbed a blunt-tipped knife out of

18  a drawer.  (*Id.*; *see* Wortman Report at 2.)  Ignoring commands from the officers to stop,

19  Mr. Dasho exited the kitchen and entered the living room at a rapid pace with the knife

20  raised over his head.  (1st Resp. at 2 (citing *Dasho*, 171 Wash. App. at *1); Miller Decl.

21  (Dkt. # 40) ¶ 3, Ex. A at 3.)  Each officer shot Mr. Dasho multiple times.  (*See* Wortman

22  Report at 2; Smith Decl. (Dkt. # 41) ¶ 3, Ex. A ("Smith Report") at 2; 1st Resp. at 2

1  (citing *Dasho*, 171 Wash. App. at *1).)  A state court jury convicted Mr. Dasho of two

2  counts of third degree assault.  *Dasho*, 171 Wash. App. at *2.

3       On August 20, 2012, Mr. Dasho filed the instant action, in which he alleges that

4  Officers Smith and Wortman used excessive force against him in violation of his

5  constitutional rights.  (*See* Compl. (Dkt. # 1).)  To support this allegation, Mr. Dasho

6  proposes to call expert witnesses, including the two witnesses at issue here—Kay

7  Sweeney and D.P. Van Blaricom.  (*See* Disc. of Expert Wit. (Dkt. # 32) at 3-5.)  Mr.

8  Dasho offers Mr. Sweeney as an expert in forensic science (*id.* at 4), and Mr. Van

9  Blaricom as an expert in police practices (*id.* at 3).

10      Mr. Sweeney intends to testify that after entering the living room Mr. Dasho likely

11  did not continue moving toward the officers, as they claim he did.  (*See* Disc. of Expert

12  Wit. Ex. F ("Sweeney Report") at 8.)  Having examined Mr. Dasho's apartment, police

13  reports, the physical evidence from the scene, and medical records (*see* 1st Resp. at 3;

14  Sweeney Report at 2-8), Mr. Sweeney offers an alternative version of events that is quite

15  specific.  According to Mr. Sweeney, Mr. Dasho most likely turned away from the

16  officers upon entering the living room and moved north along the living room wall, then

17  turned back toward the kitchen when fired upon, was hit multiple times while moving

18  toward the kitchen, and finally fell down into the space between the kitchen and living

19  room as the officers continued to fire at him.  (Sweeney Report at 8-9.)  In offering these

20  opinions, Mr. Sweeney purports to be able to identify the sequence of shots fired—

21  particularly, the first and second shots and the rough sequence of the remaining shots—as

22

1  well as Mr. Dasho's movements in the moments leading up to and during the shooting.

2  (*See id.*)

3      Mr. Van Blaricom proposes to testify regarding police practices.  (*See* Disc. of

4  Expert Wit. at 3, Ex. A ("Van Blaricom Report"); 1st Resp. at 4.)   In forming his

5  opinions, Mr. Van Blaricom has examined police reports, Mr. Sweeney's report, portions

6  of the trial testimony from Mr. Dasho's assault trial, Federal Way Police Department use

7  of force policies, and National Law Enforcement Center policies on the use of force and

8  the investigation of officer-involved shootings.  (Van Blaricom Report at 1-2.)  Mr.

9  Dasho explains that Mr. Van Blaricom will educate the jury on general principles and

10  offer an opinion in response to hypothetical questions.  (*See* 1st Resp. at 10-12.)

11      Defendants initially moved to exclude the opinions of Mr. Sweeney and Mr. Van

12  Blaricom on September 11, 2014.  (1st Mot. (Dkt. # 39).)   In that motion, Defendants

13  argued that Mr. Sweeney's opinions are inadmissible because his conclusions regarding

14  the sequence of shots and Mr. Dasho's movements are not based on sufficient data and

15  constitute conjecture and speculation.  (*See id.* at 10-11.)  They further contended that

16  Mr. Van Blaricom's opinions are also inadmissible because they are not offered on a

17  more-probable-than-not basis and because Mr. Van Blaricom's expert report fails to give

18  adequate notice of the opinions he plans to offer in this case.  (*See id.* at 12; 1st Reply

19  (Dkt. # 50) at 5-6.)   The court denied Defendants' first motion, not on the merits, but due

20  to a lack of information in the record regarding Mr. Sweeney's and Mr. Van Blaricom's

21  proposed testimony.  (*See* 11/4/14 Order (Dkt. # 58).)

22

1   To support a more informed decision, the court ordered Mr. Dasho to supplement

2   the record with filings providing (1) a clear and detailed description of Mr. Sweeney's

3   methods, why those methods are reliable in precisely reconstructing the scene of a

4   shooting, and how Mr. Sweeney applied those methods to this case; and (2) a clear and

5   detailed description of the hypothetical questions that Mr. Dasho proposes to ask Mr. Van

6   Blaricom, the opinions that Mr. Van Blaricom will offer in response, the principles about

7   which Mr. Van Blaricom will testify, and any further information useful to the court in

8   evaluating Mr. Van Blaricom's testimony under Federal Rule of Evidence 702. (*See id.*

9   at 7-9.) The court gave Mr. Dasho over 40 days to file this submission and authorized

10  Defendants to conduct discovery and refile their motion to exclude thereafter. (*See id.* at

11  9-10.)

12      Mr. Dasho responded to the court's order on December 15, 2014, with a 10-page

13  memorandum and four exhibits, three of which contain the transcript of Mr. Sweeney's

14  testimony in Mr. Dasho's criminal trial. (*See* Mem. (Dkt. # 61); *id.* Ex. 1 ("1st Crim.

15  Trans."), Ex. 2 ("2d Crim. Trans."), Ex. 3 ("3d Crim. Trans.").)[1] Mr. Dasho's

16  memorandum summarizes Mr. Sweeney's qualifications, briefly describes aspects of Mr.

17  Sweeney's methodology, and directs the court to the criminal trial transcript to see how

18  Mr. Sweeney reliably applied his methods to the facts of this case. (*See* Mem. at 2-6.)

19  The memorandum also provides several hypothetical questions that Mr. Dasho wishes to

20  ask Mr. Van Blaricom along with Mr. Van Blaricom's expected answers and a

21  ────────────────

22      [1] The fourth exhibit is Mr. Van Blaricom's expert report, which was already in the record.
    (*Compare* Mem. Ex. 4 *with* Van Blaricom Report.)

ORDER- 5

1    description of some of the principles about which Mr. Van Blaricom will testify. (*See id.*

2    at 7-9.)

3          As the court authorized, Defendants have refiled their motion to exclude Mr.

4    Sweeney's and Mr. Van Blaricom's opinions. (*See* 2d Mot.) Defendants argue in their

5    renewed motion that Mr. Dasho's supplemental filings have not satisfied the court's

6    previous order. (*Id.* at 1-2.) It remains unclear, they contend, what methods Mr.

7    Sweeney used to establish a sequence of shots and reconstruct Mr. Dasho's movements

8    and whether those methods are reliable. (*See id.* at 5-8.) In addition, Defendants argue

9    that Mr. Van Blaricom's opinions still have not been adequately disclosed and are not

10   offered on a more-probable-than-not basis. (*See id.* at 9-11.) Defendants' renewed

11   motion to exclude is now before the court.[2]

12                        **III.    DISCUSSION**

13         Rule 702 of the Federal Rules of Evidence governs the admission of expert

14   testimony in federal court:

15         A witness who is qualified as an expert by knowledge, skill, experience,
           training, or education may testify in the form of an opinion or otherwise if:
16

17

18   _____

19         [2] Mr. Dasho did not file an opposition to Defendants' renewed motion to exclude. (*See*
     Dkt.) As a result, Defendants ask the court to grant their motion under Local Civil Rule 7(b)(2)
20   (*see* 2d Reply (Dkt. # 63) at 2), which permits the court to consider a party's failure to oppose a
     non-summary-judgment motion as an admission that the motion has merit, Local Rules W.D.
     Wash. LCR 7(b)(2). The court denies Defendants' request. Mr. Dasho's supplemental filing
21   anticipates Defendants' renewed motion and urges the court not to exclude Mr. Sweeney's and
     Mr. Van Blaricom's testimony. (*See* Mem. at 1, 5, 9.) That circumstance is sufficient to
22   persuade the court not to invoke Local Civil Rule 7(b)(2)'s "admission that the motion has
     merit" provision.

ORDER- 6

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 requires that the expert be qualified and that the "'[e]xpert testimony . . . be both relevant and reliable.'"  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)); Fed. R. Evid. 702.  Relevancy "simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'"  *Estate of Barabin*, 740 F.3d at 463 (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)).

Reliability requires the court to assess "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'"  *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citations and alterations omitted)).  The Supreme Court has suggested several factors that courts can use in determining reliability:  (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-94 (1993).  The reliability inquiry is flexible, however,

and trial judges have broad latitude to focus on the considerations relevant to a particular case. *Kumho Tire*, 526 U.S. at 150.

In determining reliability, the court must rule not on the correctness of the expert's conclusions but on the soundness of the methodology, *Estate of Barabin*, 740 F.3d at 463 (citing *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)), and the analytical connection between the data, the methodology, and the expert's conclusions, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Cooper*, 510 F.3d at 942 ("Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."); Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("[T]he testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case."). Moreover, "the proponent of the expert . . . has the burden of proving admissibility." *Cooper*, 510 F.3d at 942 (citing *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*") ("[T]he party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

## A.     Kay Sweeney

The court begins by noting the issues that are not in dispute with respect to Mr. Sweeney's proposed expert testimony. First, Mr. Sweeney's qualifications are not in dispute. Defendants have not challenged Mr. Sweeney's qualifications as a forensic scientist, and the court finds that Mr. Sweeney is qualified to testify as a forensic scientist

based on his many years of on-the-job training and experience with the Seattle, King County, and Washington State crime labs and as a private forensic sciences consultant. (*See* Disc of Expert Wit. at 4, Ex. H ("Sweeney CV")); Fed. R. Evid. 702; (*see also* Mem. at 2-3.)  Further, the relevance of Mr. Sweeney's opinions is not in dispute.  Mr. Sweeney's opinions logically advance a material aspect of Mr. Dasho's case by offering an alternative version of events that tends to make Defendants' conduct appear less reasonable.  (*See* Sweeney Report at 8-9.)  As such, the court concludes that Mr. Sweeney's opinions are relevant.  *Estate of Barabin*, 740 F.3d at 463.

Finally, not all aspects of Mr. Sweeney's report are in dispute.  Both of Defendants' motions to exclude are phrased as requests to exclude Mr. Sweeney's opinions generally (*see* 1st Mot. at 1; 2d Mot. at 1), yet Defendants' actual arguments attack only Mr. Sweeney's opinions regarding (1) the sequence of shots, and (2) Mr. Dasho's movements after exiting the kitchen (*see* 1st Mot. at 10-11; 2d Mot. at 5-8).  (*See also* 2d Mot. at 5 ("Mr. Sweeney's microscopic analysis of bullet casings, for example, is not at issue; his method of layering that analysis on top of a multitude of other analyses to create a reliable shot sequence is at issue.").)  Mr. Sweeney's report, however, contains additional, narrower opinions.  For example, Mr. Sweeney opines regarding which of Mr. Dasho's wounds are entry wounds and which are exit wounds (*see* Sweeney Report at 3-4); which bullets came from which officer's gun (*see id.* at 4-5); the location of Mr. Dasho's wounds (*see id.* at 3-4); the probable path of the bullets through Mr. Dasho (*see id.* at 3-4, 9); and where Mr. Dasho ultimately came to rest on the floor (*see id.* at 2-3). (*See also, e.g.*, 1st Crim. Trans. at 134:3-20, 140:24-141:13.)  Mr. Sweeney's analysis of

1   and opinions on those discrete items of physical evidence are not at issue.  (*See* 2d Mot.

2   at 5.)  At issue here is only the reliability of Mr. Sweeney's global opinions on (1) the

3   sequence of shots and (2) Mr. Dasho's movements after exiting the kitchen (hereinafter

4   "Mr. Sweeney's Opinions" or "the Opinions").

5           The court finds that Mr. Sweeney's Opinions are unreliable and therefore

6   inadmissible.  In its prior order, the court observed that Mr. Sweeney's report consists

7   mainly of a list of the physical evidence followed by Mr. Sweeney's conclusions about

8   shot sequence and Mr. Dasho's movements.  (*See* 11/4/14 Order at 6.)  The report

9   contains little reasoning connecting the Opinions to the physical evidence and offers no

10  information to support the reliability of the Opinions.  (*See id.*; Sweeney Report at 8-9.)

11  Based on that inadequate record, the court could not determine whether Mr. Sweeney had

12  employed reliable methods and applied those methods reliably to the facts.  (*See* 11/4/14

13  Order at 6.)  The court therefore ordered Mr. Dasho to submit a supplemental filing

14  detailing Mr. Sweeney's methods, their reliability, and how Mr. Sweeney applied those

15  methods to this case.  (*See* 11/4/14 Order at 7, 9.)

16          Mr. Dasho's supplemental filing falls short of demonstrating that Mr. Sweeney's

17  methods are reliable or, even if they are reliable, that Mr. Sweeney reliably applied his

18  methods to this case.  *See Joiner*, 522 U.S. at 146; *Estate of Barabin*, 740 F.3d at 463;

19  *Cooper*, 510 F.3d at 942; Fed. R. Evid. 702 advisory committee's notes to 2000

20  amendments ("[T]he testimony must be the product of reliable principles and methods

21  that are reliably applied to the facts of the case.").  Although the supplemental filing does

22  not clearly detail the methodology behind Mr. Sweeney's opinions, the court reads the

1   memorandum and trial testimony together to lay out the following methodology:   First,

2   Mr. Sweeney analyzes the available pieces of physical evidence.   He then gathers that

3   information and superimposes on it a sequence of events that seems to him to be the best

4   overall match.   (*See* Mem. at 3-6; 2d Crim. Trans. at 52:9-18, 55:8-9; *see also* 1st Crim.

5   Trans. at 137:23-138:7; 3d Crim. Trans. at 141:8-14.)   In this case he applied that

6   methodology by examining the bullets fired, the bullet holes in the wall and floor of Mr.

7   Dasho's apartment, the police reports, and Mr. Dasho's medical records and from there

8   reached his conclusions regarding the sequence of gunfire and Mr. Dasho's movements.

9   (*See* Mem. at 3-6; 2d Crim. Trans. at 52:9-62:20; 1st Crim. Trans. at 137:23-138:7; 3d

10  Crim. Trans. at 137:15-141:14.)

11          Nothing in Mr. Dasho's filings, however, shows that Mr. Sweeney's methods are

12  reliable in establishing a shot sequence and precisely reconstructing a series of

13  movements.   In fact, the closest Mr. Dasho gets to such a showing are his conclusory

14  statements that Mr. Sweeney used methods that are "universally accepted."   (*See* Mem. at

15  3-6 ("Defendants cannot challenge the methods employed by Mr. Sweeney because they

16  are the exact same accepted and utilized methods of forensic crime scene analysis used

17  by all law enforcement agencies in the State and the country . . . . Mr. Sweeney was able

18  to use . . . universally accepted methods . . . .").)   Those statements are insufficient to

19  establish the reliability of the methods underlying Mr. Sweeney's Opinions.   *See Kumho*

20  *Tire*, 526 U.S. at 157 (citing *Joiner*, 522 U.S. at 146) (rejecting expert's unsupported

21  assertion "that his method was accurate"); *Daubert*, 509 U.S. at 592-94; *Daubert II*, 43

22  F.3d at 1316.

ORDER- 11

1    To begin, Mr. Dasho provides no evidence that Mr. Sweeney's method of

2  analyzing pieces of evidence and superimposing a narrative of events is in fact standard

3  in the field of forensic science and accepted as producing reliable results regarding the

4  type of opinions at issue here.  *See Daubert*, 509 U.S. 592-94; *Kumho Tire*, 526 U.S. at

5  151; *see also* Fed. R. Evid. 702 advisory committee's notes to 2000 amendments (listing

6  among factors potentially relevant to the reliability inquiry "[w]hether the field of

7  expertise claimed by the expert is known to reach reliable results for the type of opinion

8  the expert would give").  Mr. Dasho cites to no treatises on this subject, no scholarly

9  articles, no professional publications, no opinions of other experts in the field, and no

10  cases in which federal courts have accepted a similar methodology as a basis for these

11  types of opinions.  (*See* 1st Resp.; Mem.; *see also* Sweeney Report.)  Furthermore, the

12  court's legal research has not revealed a single instance of a federal court allowing a

13  forensic expert to offer opinions of this type based on a like methodology.

14    To the contrary, several cases involving forensics experts suggest that it is at least

15  doubtful whether forensic scientists can reliably establish shot sequence based on the type

16  of evidence available here.[3]  For example, in *Jordan v. City of Chicago*, a forensic expert

17

18    [3] At least one court has allowed shot sequence testimony from a forensic expert;
    however, in that case, the expert had an audio recording of the incident and could compare the

19  sounds of the shots to determine the order in which the guns fired.  *See Cole v. Hunter*, No. 3:13-
    cv-02719-O, 2014 WL 7272608, at *5-6 (N.D. Tex. Dec. 22, 2014).  Here, there is no indication

20  that an audio recording of the incident exists, or that any similar piece of evidence was available
    to Mr. Sweeney.  (*See* Sweeney Report at 2-8.)  In addition, Mr. Sweeney's Opinions concern

21  not the order in which Officers Smith and Wortman fired their weapons but rather the order in
    which particular bullets corresponding to particular wounds or bullet holes were fired.  (*See*

22  Sweeney Report at 8-9; 2d Crim. Trans. at 52:9-62:20; 1st Crim. Trans. at 137:23-138:7; 3d
    Crim. Trans. at 137:15-141:14.)

with extensive credentials admitted that based on ballistic and wound evidence he "could not determine the order in which the bullets hit Van Allen." *Jordan v. City of Chicago*, No. 08 C 6902, 2012 WL 254243, at *3-4, *10 (N.D. Ill. Jan. 27, 2012); *see also Lee v. City of Richmond*, No. 3:12cv471, 2014 WL 5092715, at *13-14 (E.D. Va. Sept. 30, 2014) (excluding as unreliable a forensic pathologist's opinions on "sequence of shots and the position of Fleming's body at various times before he fell to the floor" due to lack of sufficient data and failure to satisfy any of the *Daubert* criteria).  Moreover, the Washington Court of Appeals has previously rejected shot sequence testimony from Mr. Sweeney that was based on blood-spatter and trajectory analysis, finding such testimony to be "completely speculative" and "mere conjecture." *State v. Eggleston*, 108 Wash. App. 1011, at *15 (2001).[4]

Mr. Dasho also gives no indication that Mr. Sweeney's methodology can be or has been tested, or that Mr. Sweeney's methodology has undergone peer review. *Daubert*, 509 U.S. at 592-94.  Nor does he provide any known error rate for Mr. Sweeney's methodology. *Id.*  In sum, the record contains no verification that Mr. Sweeney's methodology is reliable in producing shot sequences and precisely reconstructing a series of movements during a shooting. *See id.*; *Daubert II*, 43 F.3d at 1316.  Accordingly, the court finds that Mr. Dasho has failed to meet his burden to show that reliable methods underlie Mr. Sweeney's Opinions. *See Cooper*, 510 F.3d at 942.

---

[4] The court may consider unpublished state court decisions, even though such opinions have no precedential value. *See Emp'rs Ins. of Wasau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 (9th Cir. 2003).

1    Furthermore, even if Mr. Dasho had shown that Mr. Sweeney's methods are

2   generally reliable, the court would find that Mr. Dasho has nevertheless failed to

3   demonstrate that Mr. Sweeney reliably applied his methods to the facts of this case.  *See*

4   *Joiner*, 522 U.S. at 146; Fed. R. Evid. 702(d).  Mr. Sweeney performs a substantial

5   analytical leap in creating the Opinions.  He uses pieces of static physical evidence such

6   as bullet holes and wounds to arrive at a detailed reconstruction of a dynamic situation

7   involving two officers firing in quick succession at a rapidly moving person.  (*See*

8   Sweeney Report at 2-9; Mem. at 3-6; 2d Crim. Trans. at 52:9-62:20; 1st Crim. Trans. at

9   137:23-138:7; 3d Crim. Trans. at 137:15-141:14.)   Moreover, Mr. Sweeney makes this

10   leap on the basis of limited information, as he was able to calculate trajectories for only

11   five of the 13 shots fired, and he acknowledges that an error at any stage would render his

12   entire reconstruction inaccurate.  (*See* Sweeney Report at 8-9; Miller Decl. (Dkt. # 40)

13   ¶ 8, Ex. F ("Sweeney Dep.") at 56:15-18, 79:9-13.)  The court could not find that such an

14   analytical feat was performed reliably without an in-depth explanation of Mr. Sweeney's

15   reasoning, including his consideration and rejection of alternative scenarios.  *See Joiner*,

16   522 U.S. at 146; *Poosh v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal.

17   2012) (noting that reliability may be in doubt where an expert "fails to address and

18   exclude alternative explanations for the data on which he bases his findings" (internal

19   quotations and alterations omitted)); Fed. R. Evid. 702 advisory committee's notes to

20   2000 amendments (listing as a potential factor for determining reliability "[w]hether the

21   expert has adequately accounted for obvious alternative explanations") (citing *Claar v.*

22   *Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).

1    Mr. Dasho, however, has not provided the court with an adequate explanation.

2  Mr. Sweeney's report contains no discussion of alternative scenarios and almost no

3  description of Mr. Sweeney's reasoning.  (*See* Sweeney Report at 8-9.)  The transcript of

4  Mr. Sweeney's testimony during Mr. Dasho's criminal trial is somewhat more helpful,

5  but even it offers only an outline of Mr. Sweeney's reasoning and provides almost no

6  meaningful consideration of alternatives.  (*See* 2d Crim. Trans. at 52:9-62:20; 1st Crim.

7  Trans. at 137:23-138:7; 3d Crim. Trans. at 137:15-141:14.)  Further, Mr. Dasho has not

8  pointed to any materials showing that Mr. Sweeney addressed such topics as whether Mr.

9  Dasho's body could have been contorted while running and being fired on, how being

10  shot might have contributed to any such contortions, whether some bullets may have

11  changed paths upon striking Mr. Dasho, and how Mr. Sweeney ensured the accuracy of

12  his reconstruction while calculating trajectories for only five of 13 bullets.  Mr.

13  Sweeney's perfunctory explanations fail to convince the court that Mr. Sweeney reliably

14  applied his methods to this case.  *See Joiner*, 522 U.S. at 146.

15    In sum, the court is unable to determine whether Mr. Sweeney's Opinions are

16  reliable, or alternatively, whether he has engaged in unreliable conjecture and

17  speculation.  *See Estate of Barabin*, 740 F.3d at 463.  Mr. Dasho has failed to provide any

18  evidence that Mr. Sweeney's methods are reliable, other than his and Mr. Sweeney's own

19  statements, which the court is not bound to accept.   Mr. Dasho has also failed to show

20  that Mr. Sweeney reliably applied his methods to the facts of this case.  For these reasons

21  and because Mr. Dasho bears the burden to show that Mr. Sweeney's testimony is

22

1  admissible, the court grants Defendants' motion as to Mr. Sweeney's Opinions and

2  excludes the Opinions as unreliable.  *See Cooper*, 510 F.3d at 942.

3  **B.    D.P. Van Blaricom**

4          As with Mr. Sweeney, the court begins its analysis with respect to Mr. Van

5  Blaricom by observing what issues are not in dispute here.  First, Mr. Van Blaricom's

6  qualifications are not in dispute.  Defendants do not challenge Mr. Van Blaricom's

7  qualifications to testify as an expert on police practices, including police practices

8  regarding the use of force, and the court finds that he is qualified in that respect based on

9  his long experience as a police officer, police chief, and police practices consultant.[5]  (*See*

10 Disc. of Expert Wit. at 3 Ex. C ("Van Blaricom CV").)  Second, the reliability of Mr.

11 Van Blaricom's opinions is not in dispute here.  Mr. Van Blaricom states in his report

12 that his method is to analyze a given factual scenario against his training, his experience,

13 and standards of police conduct to determine whether the standards have been observed.

14 (*See* Van Blaricom Report ¶¶ 6-7.)  The court finds that Mr. Van Blaricom opinions are

15 reliable.  *See Estate of Barabin*, 740 F.3d at 463; Fed. R. Evid. 702 advisory committee's

16 notes to 2000 amendments ("In certain fields, experience is the predominant, if not sole,

17 basis for a great deal of reliable expert testimony.").

18

19         _____

20 [5] The court also finds, however, that Mr. Van Blaricom is not qualified to testify as an
   expert in forensic science.  Mr. Dasho has made no effort to qualify Mr. Van Blaricom as such,
   and has in fact disclaimed any intention to elicit testimony from Mr. Van Blaricom on that
21 subject.  (*See* 1st Resp. at 10 ("Chief Van Blaricom is not being offered to present scientific
   testimony . . . . Plaintiff does not intend to solicit Chief Van Blaricom's opinion regarding the
   scientific validity of plaintiff's forensic expert Kay Sweeney.")  As such, the court will not
22 permit Mr. Van Blaricom to testify about forensic science or analysis.

1    Disputed here are whether Mr. Van Blaricom's opinions are adequately disclosed

2 in his expert report and whether those opinions are relevant.  (*See* 2d Mot. at 9-11.)  Mr.

3 Dasho's filings concerning Mr. Van Blaricom are, like Mr. Van Blaricom's report,

4 somewhat difficult to follow and at points appear contradictory.  Nevertheless, the court

5 reads Mr. Dasho's filings as explaining that Mr. Van Blaricom will offer two types of

6 opinions:  (1) he will testify about general police practices and standards concerning the

7 use of force ("general opinions"), and (2) he will give opinions about whether the use of

8 force in this case complied with those standards in response to hypothetical questions

9 based on Mr. Sweeney's testimony ("case-specific opinions").  (*See* Mem. at 6-9; Van

10 Blaricom Report at 4-7.)  Defendants argue that Mr. Van Blaricom's case-specific

11 opinions are inadmissible because they are not phrased in more-probable-than-not terms

12 and are therefore irrelevant.  (*See* 2d Mot at 9-10.)  Defendants also urge the court to

13 exclude both types of opinions on the ground that they are not adequately disclosed in

14 Mr. Van Blaricom's report.  (*See id.* at 9-11.)

15    As discussed above, expert testimony must be not only reliable but also relevant.

16 *See Estate of Barabin*, 740 F.3d at 463.  Relevancy requires that the testimony logically

17 advance a material aspect of the party's case.  *Id.*; *see also* Fed. R. Evid. 401, 402.

18 Moreover, the "court's determination of relevance must consider the applicable

19 substantive standard [of proof]."  *Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 996 (9th Cir.

20 1997) (citing *Daubert II*, 43 F.3d at 1320), *abrogated on other grounds by Weisgram v.*

21 *Marley Co.*, 528 U.S. 440 (2000).  In an excessive force case under 42 U.S.C. § 1983, the

22 standard of proof is a preponderance of the evidence, which requires the plaintiff to prove

ORDER- 17

1    his or her claims on a more-probable-than-not basis.  *See Tortu v. Las Vegas Metro.*

2    *Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009); *U.S. v. Wong*, 2 F.3d 927, 935-36 (9th

3    Cir. 1993).  Thus, if an expert proposes to testify regarding the appropriateness of the

4    force used, that testimony is relevant only if it suggests that the force used was more

5    likely than not excessive.  *See Schudel*, 120 F.3d at 996 (citing *Daubert II*, 43 F.3d at

6    1320-22).  Testimony that suggests only that the force used "could *possibly* have" been

7    excessive is irrelevant and inadmissible.  *Id.* (emphasis in original) (internal quotation

8    marks omitted).

9          Defendants contend that Mr. Van Blaricom's case-specific opinion is irrelevant

10   (*see* 2d Mot. at 9-10), and the court agrees.  The sole case-specific opinion in Mr. Van

11   Blaricom's report reads as follows:  "[I]t is my considered professional opinion that this

12   OIS [officer-involved shooting] *may have been* an unreasonable use of excessive force."

13   (Van Blaricom Report ¶ 15 (emphasis added).)  This opinion fails to logically advance a

14   material aspect of Mr. Dasho's case, *see Estate of Barabin*, 740 F.3d at 463, because it

15   does not suggest that Officers Smith and Wortman's use of force was more likely than

16   not excessive, *see Schudel*, 120 F.3d at 996 (citing *Daubert II*, 43 F.3d at 1320-22).

17   Rather it suggests only that their use of force could possibly have been excessive.  Mr.

18   Van Blaricom's case-specific opinion is therefore irrelevant and inadmissible, and the

19   court grants Defendants' motion to exclude as to that opinion.  *See id.*

20         In his supplemental memorandum, Mr. Dasho attempts to preserve Mr. Van

21   Blaricom's case-specific testimony by arguing that Mr. Van Blaricom has two case-

22   specific opinions.  (*See* Mem. at 6-7.)  According to Mr. Dasho, the first opinion

1  corresponds to the above-quoted equivocal language and is inadmissible, but that opinion

2  concerns only the initial shots that Officers Smith and Wortman fired.  (*See id.* at 6

3  (quoting Van Blaricom Report ¶ 15) ("Chief Van Blaricom does <u>not</u> have a legally

4  admissible opinion as to whether the initial gunshots fired by the Officers Smith and

5  Wortman represent excessive force.  '[T]his OIS ***may*** have been an unreasonable use of

6  excessive force.'" (emphasis and alterations in original)).)  The second opinion, Mr.

7  Dasho argues, concerns the later shots and is unequivocal and admissible.  (*See id.* at 6-7

8  (quoting Van Blaricom Report ¶ 15b) ("But Chief Van Blaricom <u>does</u> have a legally

9  admissible opinion regarding whether the additional shots fired after Mr. Dasho 'reversed

10  his path' and 'presented his right side to shooters' and began his ' "downward fall" [sic]

11  to the floor' constitute excessive force." (emphasis in original)).)

12       The court finds Mr. Dasho's reading of Mr. Van Blaricom's report unpersuasive.

13  First, nothing in Mr. Van Blaricom's report indicates that his "may have been" opinion is

14  limited to the initial shots.  Indeed, the opinion itself refers to "this OIS," not a specific

15  part of the shooting.  (Van Blaricom Report ¶ 15.)  Second, Mr. Van Blaricom's report

16  does not contain the supposed second case-specific opinion.  Mr. Dasho cites as the

17  location of that opinion passages in which Mr. Van Blaricom lists Mr. Sweeney's

18  conclusions with which Mr. Van Blaricom agrees as well as a principle of police practice

19  related to the use of force.  (*See* Mem. at 6-7 (citing Van Blaricom Report ¶¶ 15b, 15e).)

20  Mr. Van Blaricom frames these passages, however, not as opinions about the use of force

21  in this case but as information that he "was especially mindful of" in formulating his

22

ORDER- 19

1  opinion that "this OIS may have been an unreasonable use of excessive force." (Van

2  Blaricom Report ¶ 15.)

3        As such, Mr. Dasho cannot separate out some language from Mr. Van Blaricom's

4  report to create an admissible second case-specific opinion.  Mr. Van Blaricom's report

5  contains one case-specific opinion, and that opinion is irrelevant and inadmissible.  This

6  conclusion also dictates that Mr. Dasho may not use hypothetical questions to elicit Mr.

7  Van Blaricom's opinion about the specific use of force in this case.  (*See* Mem. at 7-8.)

8  As Defendants point out, Mr. Dasho's proposed hypothetical questions all derive from

9  the same passages in Mr. Van Blaricom's report where Mr. Dasho purports to locate an

10  admissible second case-specific opinion.  (*See* 2d Mot. at 9-10; *compare* Mem. at 7-8

11  *with* Van Blaricom Report ¶¶ 15b, 15c.)  Thus, even to the extent Mr. Van Blaricom's

12  report discloses opinions that correspond to Mr. Dasho's proposed questions,[6] such

13  opinions are also irrelevant and inadmissible.[7]  Accordingly, Mr. Van Blaricom may not

14  offer an opinion in any form regarding the specific use of force in this case.

15

16        [6] Mr. Dasho's supplemental memorandum prefaces the proposed hypothetical questions

17  with the phrase "Hypothetical questions *could* include," suggesting that Mr. Dasho may intend to
ask other or additional questions. (Mem. at 7 (emphasis added).)  The court, however, ordered
Mr. Dasho to disclose "the hypothetical question or questions that [he] proposes to ask."

18  (11/4/14 Order at 9.)  A sampling of possible questions is not responsive to the court's order.
For that reason alone the court would bar Mr. Dasho from asking any further questions.  In

19  addition, any further questions would not have a basis in Mr. Van Blaricom's report (*see* Van
Blaricom Report ¶ 15), and so the court would exclude them as undisclosed opinions in violation

20  of Federal Rule of Civil Procedure 26(a)(2)(B)(i).  *See* Fed. R. Civ. P. 37(c)(1).

21        [7] For example, Mr. Dasho proposes to ask Mr. Van Blaricom the following question:
"[I]f the testimony of plaintiff's forensic expert is that none of Mr. Dasho's gunshots wounds

22  were front to back . . . then, [sic] do you have an opinion on a more probable than not basis [sic]
as to whether any of the shots fired were excessive." (Mem. at 7.)  Mr. Dasho states that Mr.

1    Defendants also attack Mr. Van Blaricom's opinions regarding general police

2  practices and standards for the use of force on the ground that such opinions were not

3  adequately disclosed.  (*See* 2d Mot. at 10; *see also* 1st Reply at 6.)  Federal Rule of Civil

4  Procedure 26(a)(2) governs  the disclosure of expert testimony.  *See* Fed. R. Civ. P.

5  26(a)(2).  For any expert hired for purposes of litigation, that Rule requires the proponent

6  to provide a written report containing, among other things, "a complete statement of all

7  opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P.

8  26(a)(2)(B)(i).  If the proponent fails to provide the information required by Rule

9  26(a)(2), the proponent may not use the undisclosed information on a motion, at a

10  hearing, or at trial, unless the proponent shows that its failure was substantially justified

11  or harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

12  259 F.3d 1101, 1106-07 (9th Cir. 2001).

13    The court rejects Defendants' challenge to Mr. Van Blaricom's general opinions

14  regarding police practice, because the court finds that Mr. Van Blaricom's report

15  adequately discloses the practices and standards about which he plans to testify.

16  Admittedly, Mr. Van Blaricom's report couches these standards and practices in terms of

17  background information rather than opinions.  (*See* Van Blaricom Report ¶ 13; *see also*

18

19  Van Blaricom's "[e]xpected answer" is "Yes, the additional shots were excessive."  (*Id.* at 8.)
20  Yet the proposed question is derived from paragraph 15c of Mr. Van Blaricom's report, which is
    part of the information of which Mr. Van Blaricom was especially mindful in forming his
21  opinion that this OIS may have been an excessive use of force.  (*See* Van Blaricom Report ¶ 15.)
    Thus, Mr. Van Blaricom's report indicates that his answer would be an irrelevant "maybe," not
22  an admissible "yes."

*id.* ¶ 15e.)  Although that characterization has led to some confusion (*see* 11/4/14 Order

at 8), Mr. Dasho's supplemental memorandum has identified the background principles

section of Mr. Van Blaricom's report as containing the standards about which Mr. Van

Blaricom will testify (*see* Mem. at 8-9).[8]  The court therefore concludes that Mr. Van

Blaricom's report is sufficient under Federal Rule of Civil Procedure 26(a)(2)(B) with

respect to his general police practices opinions.  The court will permit Mr. Van Blaricom

to testify about the standards disclosed in his report, insofar as he is able to do so without

offering legal conclusions or any testimony that attempts to instruct the jury on the law.

//

//

//

//

//

//

//

//

//

//

---

[8] In addition, the court notes that while Mr. Van Blaricom presents this section of his report as background information, he also states that he is providing this information "for the fact finder's enhanced understanding of actual police practice." (Van Blaricom Report ¶ 13.)  This statement indicates that the background principles are proposed testimony to be offered in front of the jury.

1

## IV.   CONCLUSION

2        For the foregoing reasons, the court GRANTS in part and DENIES in part

3   Defendants' renewed motion to exclude (Dkt. # 62).  The court GRANTS the motion as

4   to and EXCLUDES the opinions of Mr. Sweeney related to the sequence of gunshots and

5   the movements of Mr. Dasho after exiting the kitchen.  The court does not exclude any

6   other aspects of Mr. Sweeney's opinions as described above.  In addition, the court

7   GRANTS the motion as to and EXCLUDES the opinions of Mr. Van Blaricom regarding

8   the specific use of force in this case.  The court DENIES the motion, however, as to Mr.

9   Van Blaricom's opinions on general police practices and standards as described above.

10        Dated this 27th day of April, 2015.

11

12

13   _____

     JAMES L. ROBART

14   United States District Judge

15

16

17

18

19

20

21

22

ORDER- 23